UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-2442

UNITED STATES ex rel. ROBERT C. SEARLE,

Plaintiff − Appellant,

v.

DRS C3 & AVIATION COMPANY; THE TOLLIVER GROUP, INC.,

Defendants – Appellees,

and

DRS TECHNICAL SERVICES, INC.,

Defendant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:14−cv−00402−CMH−TCB)

Submitted: November 29, 2016                    Decided: February 23, 2017

Before SHEDD, AGEE, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Christopher E. Brown, THE BROWN FIRM PLLC, Alexandria, Virginia; Dequilla Wayne White, Leesville, Louisiana, for Appellant. Walter Brad English, Emily Jones Chancey, MAYNARD, COOPER & GALE, P.C., Huntsville, Alabama; Stephen

Obermeier, WILEY REIN LLP, Washington, D.C., for Appellee The Tolliver Group, Inc. Richard L. Beizer, Amy S. Lee, CROWELL & MORING LLP, Washington, D.C., for Appellee DRS C3 & Aviation Company.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert Searle appeals the district court's grant of summary judgment to DRS C3 & Aviation Company ("DRS C3") and The Tolliver Group, Inc. ("TTGI"), whom he accused, along with DRS Technical Services, Inc. ("DRS TSI"), of violating the False Claims Act and conspiring to defraud the government. Searle also appeals the district court's denial of his motions to strike declarations that DRS TSI, DRS C3, and TTGI (collectively, the "Defendants") submitted in support of summary judgment. The district court held that the declarations were admissible and found them to be "an insurmountable hurdle" for Searle because they effectively absolved the Defendants of any liability. *U.S. ex rel. Searle v. DRS Tech. Servs., Inc.*, No. 1:14-CV-00402, 2015 WL 6691973, at *1 (E.D. Va. Nov. 2, 2015). We agree, and therefore affirm.

I.

A.

In February 2009, the United States Army's Tank-automotive and Armaments Command ("TACOM") awarded blanket purchase agreement contract W56HZV-09-A-A902 (the "Base Contract") to DRS TSI. In August 2011, TACOM awarded Task Order 10 under the Base Contract to DRS TSI. DRS TSI and DRS C3 executed a novation agreement whereby, effective April 2012, DRS C3 succeeded to DRS TSI's interest in Task Order 10. Through a novation agreement effective September 2012, TTGI succeeded to DRS C3's interest in Task Order 10.

Task Order 10 required the contractor to create and deliver to TACOM three Technical Manuals that military field users could use to support and maintain the 910 MCV-Mine Clearing System (the "Mine-Clearing Vehicle"). The contractor had to comply with the requirements of Task Order 10's Performance Work Statement (the "PWS"). Task Order 10's PWS required the contractor to, inter alia: perform all work in accordance with government standards; implement and maintain an effective quality control program; and submit deliverables as directed by the government.

Task Order 10 also stated that a Contracting Officer Representative would provide Government Furnished Information comprising, among other things, commercial off-the-shelf manuals and a Technical Data Package from the original equipment manufacturer. The government was unable, however, to purchase all of the necessary engineering and technical data constituting the Technical Data Package from the Mine-Clearing Vehicle's original equipment manufacturer, and thus could not provide the Technical Data Package to TTGI. Instead of terminating Task Order 10 for convenience, the government chose to allow TTGI to proceed. The government updated the PWS to reflect the unavailability of the Technical Data Package and to instruct the contractor to use "commercial off the shelf manuals [and a Mine-Clearing Vehicle] . . . as source data." J.A. 98–101.

B.

In May 2015, Searle filed his first amended complaint on behalf of the United States, wherein he alleged that the Defendants violated 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act by falsely stating through certifications and proofs of claims that the

4

Technical Manuals complied with the PWS.[1]  In particular, Searle alleged that the Defendants failed to comply with the PWS by producing the Technical Manuals without the Technical Data Package and including information—references to gloves and a gasket, among other things—in deliverables that deviated from military standards and regulations.  Searle also alleged that the Defendants, "through agreement including novation agreements," conspired to defraud the government in violation of § 3729(a)(1)(C).  J.A. 62–63.

The case proceeded to discovery, and the parties submitted cross-motions for summary judgment.  In support of their motions for summary judgment, the Defendants submitted declarations by Travis Christner and Mark Miller.  Searle moved to strike the declarations.

Christner was the government's Contracting Officer Representative for Task Order 10.  In that position, he "became familiar with the requirements of" the Base Contract and Task Order 10 and had "primary responsibility for ensuring that the contractors' performance" conformed to Task Order 10's requirements.  J.A. 419.  As TTGI's Program Manager for Task Order 10, Miller became "familiar with the requirements of Task Order 10, and TTGI's performance thereunder."  J.A. 364.

In his declaration, Christner states that the only certifications that the Defendants were required to submit were for "the Operator Manual [Preliminary Technical Manual]

---

[1] Searle filed his first complaint in April 2014.  The government declined to intervene in the action, and the district court subsequently dismissed Searle's complaint without prejudice for failure to plead fraud with particularity.

# 1 and the Maintenance Manual [Preliminary Technical Manual] # 1." J.A. 425. He "reviewed and accepted [those] certifications." J.A. 425. Christner concludes his declaration by stating that

> DRS TSI, [DRS C3,] and TTGI have performed to date as required under the Base Contract and Task Order 10 as modified. To the extent that [Searle] challenges what he perceives to have been deviations from the PWS or other requirements, those deviations to date were knowingly accepted by the government.

J.A. 430. Miller concludes his declaration in a similar fashion, stating that TTGI has not submitted any false claims or certifications. Christner's and Miller's declarations generally track each other, and each provides material relevant to the allegations in Searle's complaint. We summarize relevant parts below.

## 1. Certifications and Invoices

The Christner declaration states that, contrary to the allegations in Searle's complaint, the Defendants did not and were not required to submit "certification of the accuracy and completeness of work to TACOM, including conformity to all standards [and] regulations . . . in the PWS." J.A. 426. Christner also states that, contrary to the allegations in Searle's complaint, none of the Defendants' invoices contained or were required to contain "certification of compliance with" the PWS or other regulations. J.A. 426–27. With respect to government payments to the Defendants, Christner states that based upon the type of contract, "payments . . . would have been made irrespective of the content of the validation certificates." J.A. 426.

6

### 2. The Government's Role in Drafting the Manuals

After the contractor submitted a Preliminary Technical Manual, various government agencies would review and modify it. TACOM would gather those edits and return them to the contractor, and the process would repeat itself until no changes were suggested. Christner's and Miller's declarations each state that "after [Preliminary Technical Manual] #1 . . . all changes were made at the express direction of the government." J.A. 368, 423.

### 3. Gasket and General Purpose Gloves

The Army created and provided to TTGI a Logistics Support Analysis Record (a "LSAR") for the Mine-Clearing Vehicle. The LSAR includes the Provisioning Requirements, which is a list of items available for purchase by the Army. The Provisioning Requirements that TTGI received had an entry for a gasket, NSN 5330-00-695-9116. Though TACOM thought otherwise, the gasket could not be procured at the time that TACOM provided the LSAR to TTGI. According to Christner, "[a]ny initial inaccuracy regarding the specified gasket was not the fault of . . . TTGI, and has since been corrected." J.A. 429. And Miller states that "TTGI notified TACOM of the error, which has since been corrected." J.A. 371.

The Provisioning Requirements also had an entry for "general purpose gloves," NSN 8415-01-136-0078, which could not be procured at the time that TACOM provided the LSAR to TTGI. Christner's declaration states that "TTGI notified TACOM . . . that the general purpose gloves . . . were no longer available. . . . Any initial inaccuracy

regarding the specified general purpose gloves was not the fault of [TTGI], and has since been corrected." J.A. 430. Miller's declaration states the same.

C.

The district court rejected Searle's motions to strike the declarations and granted summary judgment in favor of the Defendants. As the district court explained:

> The declarations at issue contain relevant, legally obtained information and establish the facts necessary to determine whether Plaintiff's claims are meritorious. The record does not support Plaintiff's contention that regulations were violated in obtaining the declarations. . . .
>
> Per the Christner declaration, the record supports a finding that Defendants met the [*U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)] prerequisites for obtaining official information from employees of federal agencies as codified at 32 C.F.R. § 516.41(d) and Army Regulation 27-40, 7-2(d). DRS Defendants and TTGI each sent timely, written *Touhy* requests to the Department of the Army stating that they requested specific information from Mr. Christner and others concerning this litigation. . . . Defendants were under no obligation to inform Plaintiff or his counsel about the *Touhy* request and did not do so. *See* 32 C.F.R. § 516.41(d). Like the Defendants, Mr. Christner and the officials at the U.S. Army also complied with the *Touhy* regulations.
>
> Likewise, Plaintiff offers no support for his claim that the Miller declaration is inadmissible. . . . A mere accusation of bad faith is insufficient to mount an argument for striking evidence.

*U.S. ex rel. Searle*, 2015 WL 6691973, at *1–2. Then, based in large part upon the Christner declaration, the court held that all of Searle's claims failed as a matter of law. *Id.* at *7–15 (explaining that Searle could not establish a single element of his False Claim Act claims under either an express or implied theory of certification and that there was no evidence of a conspiracy).

II.

Searle contends that the district court abused its discretion in refusing to strike the declarations. Searle also contends that the district court erred in granting summary judgment to the Defendants, but that part of his argument ignores the implications of the declarations.

We review the denial of a motion to strike a declaration for abuse of discretion, *see FDIC. v. Cashion*, 720 F.3d 169, 173–74 (4th Cir. 2013), and a grant of summary judgment de novo, *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011). The district court committed no abuse of discretion. As it explained, the Defendants followed relevant regulations in obtaining the Christner declaration, and each declaration satisfies Federal Rule of Civil Procedure 56(c)(4), which provides the requirements for using a declaration to support a motion for summary judgment. And after denying the motions to strike, the district court correctly granted summary judgment in favor of the Defendants because there was no evidence that they had made a false statement or participated in a fraudulent course of conduct. *See* 31 U.S.C. § 3729(a)(1)(C) (imposing liability on any person who, as relevant here, conspires to make a false statement or participate in fraudulent conduct in violation of § 3729(a)(1)(A)); *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003) (providing that a plaintiff must show, inter alia, a false statement or fraudulent course of conduct to establish a violation of § 3729(a)(1)(A)). Simply put, Searle has no answer to the Christner declaration, which, standing unopposed, forecloses

9

a finding that the Defendants made an express or implied false statement or participated in a fraudulent course of conduct.

Accordingly, we affirm for the reasons stated by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

10