# United States Court of Appeals
# for the Federal Circuit

---

**TOLLIVER GROUP, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2020-2341

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-01763-CFL, Senior Judge Charles F. Lettow.

---

Decided:  December 13, 2021

---

WALTER BRAD ENGLISH, Maynard, Cooper & Gale, PC, Huntsville, AL, argued for plaintiff-appellee.  Also represented by EMILY J. CHANCEY; MICHAEL W. RICH, Burr & Forman LLP, Mobile, AL.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., TARA K. HOGAN.

---

Before DYK, TARANTO, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

The Tolliver Group, Inc. had a contract with the United States under which Tolliver was obliged to write technical manuals for government-used equipment and the government was obliged to supply Tolliver certain information relevant to that task. When the government failed to obtain the information, and therefore failed to supply it to Tolliver, the parties modified the contract. Tolliver ultimately produced the manuals.

After the modification, however, a third party sued Tolliver in the name of the United States under the False Claims Act, alleging, among other things, that Tolliver had made a false certification of compliance with the original contract because Tolliver had not received the information that the government was contractually obliged to provide. The government, rather than intervening in the case (and then dismissing it), allowed the False Claims Act (*qui tam*) litigation to proceed. With evidentiary help from the government, Tolliver ultimately prevailed in the *qui tam* case, but only after incurring substantial legal fees.

Tolliver submitted a claim to the government's contracting officer under the Contract Disputes Act (CDA), 41 U.S.C. § 7101 *et seq.*, for an "equitable adjustment" for reimbursement of "allowable legal fees." J.A. 109. The contracting officer denied the claim. Tolliver then brought the present action in the Court of Federal Claims (Claims Court), seeking payment of that claim under 41 U.S.C. § 7104(b)(1). The Claims Court entered judgment for Tolliver on the ground that the United States had breached an implied warranty of performance. *Tolliver Grp., Inc. v. United States*, 146 Fed. Cl. 475, 479 (2020) (*CFC Opinion*); *Tolliver Grp., Inc. v. United States*, 148 Fed. Cl. 351, 352 (2020) (*Reconsideration Opinion*). We now hold that because Tolliver never submitted a claim of breach of that warranty to the contracting officer, the Claims Court lacked jurisdiction to adjudicate such a claim.

I

In September 2012, Tolliver assumed, by novation, responsibility for performance of a 2011 contract with the United States Army Contracting Command (Army) to write technical manuals addressing how to operate and maintain the Hydrema 910 mine-clearing vehicle.[1] Under that fixed-price level-of-effort contract, the Army promised to provide to Tolliver a "technical data package" (TDP) containing the manufacturer's specifications for the vehicle. But the Army never in fact provided the TDP to Tolliver because it was unable to obtain the information from the manufacturer. According to Tolliver, the Army nevertheless directed Tolliver to continue its performance. J.A. 90, 93, 98, 101. In April 2013, the Army and Tolliver modified the contract, converting it to a fixed-price contract, substantially lengthening the time for performance, increasing its monetary value, and removing the Army's obligation to provide Tolliver the TDP. The parties agree that Tolliver successfully fulfilled its obligations under the modified contract. J.A. 83, 87.

Meanwhile, in April 2014, Robert Searle, acting in the name of the United States, brought an action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, against Tolliver in the District Court for the Eastern District of Virginia. Searle, as third-party relator, alleged that Tolliver had falsely certified compliance with the original contract, despite never having received the promised TDP. The United States declined to intervene in the *qui tam* suit (a step that, had it been taken, would have allowed the government to request dismissal of the suit, subject to statutory procedures). *See* 31 U.S.C. § 3730(b)(1), (c)(2)(A). With evidentiary assistance from the government, J.A. 84, Tolliver successfully defended the lawsuit, both in the district court

---

[1]    For present purposes, we may, and do, refer to Tolliver and its predecessors on the contract as "Tolliver."

and then on Searle's appeal to the United States Court of Appeals for the Fourth Circuit. *See United States ex rel. Searle v. DRS Technical Servs., Inc.*, No. 1:14-cv-00402, 2015 WL 6691973 (E.D. Va. Nov. 2, 2015); *United States ex rel. Searle v. DRS C3 & Aviation Co.*, 680 F. App'x 163 (4th Cir. 2017).

In June 2017, after the *qui tam* suit ended, Tolliver sought reimbursement for the legal fees it had expended defending the lawsuit. In a letter to the contracting officer, Tolliver sought "an equitable adjustment and payment . . . in the amount of $195,889.78 for allowable legal fees." J.A. 109. Citing Federal Acquisition Regulations (FAR) § 31.205-47, codified at 48 C.F.R. § 31.205-47, Tolliver argued that "[a] contractor who successfully defends a False Claim[s] Act action is entitled to recover its costs in defending the action, including legal fees, up to a maximum of 80% of those fees." *Id.* The contracting officer denied the claim, reasoning that the claimed legal fees were neither allocable to the contract nor permitted by the terms of the fixed-price contract. *See* J.A. 104–07.

Tolliver then sued the United States in the Claims Court. In its initial complaint, Tolliver stated two causes of action. Tolliver alleged that the government had made a "Constructive Change" to the contract by requiring Tolliver to proceed without the TDP, and it was that directive which provoked the *qui tam* action and hence caused Tolliver to incur the legal fees for which it was seeking government payment. J.A. 101. Tolliver separately alleged a "Breach of Contract – Denial of Allowable Costs," arguing that it was entitled to reimbursement for 80% of its legal fees under the FAR. J.A. 101–02.

After the United States filed a motion to dismiss, Tolliver amended its complaint. For the constructive-change claim, Tolliver added that the United States had instructed Tolliver to reverse engineer the Hydrema without the TDP and that the United States had failed to dismiss the

meritless False Claims Act suit brought in its name. J.A. 93–94. For the second claim, Tolliver changed the name of the claim to just "Breach of Contract," added the allegation that the government breached the contract by failing to provide the TDP as promised, and alleged that Searle's lawsuit was a "direct, proximate and foreseeable result of the government's failure to provide the TDP." J.A. 94.

The United States filed another motion to dismiss, and at a hearing on the motion, the Claims Court expressed skepticism that the claim before it had been before the contracting officer, saying: "[T]he elements of the claim you made to the contracting officer are different from the elements of a constructive change or breach of contract claim that you [made here]. They're just different." J.A. 86–87. Tolliver again amended its complaint. J.A. 74–80. The second amended complaint contained a single claim, for "Recovery of Allowable Cost under FAR § 31.205-47." J.A. 79. That complaint survived the United States' next motion to dismiss. *Tolliver Grp., Inc. v. United States*, 140 Fed. Cl. 520, 522–23 (2018).

A year later, the parties both moved for summary judgment, and the Claims Court granted Tolliver's motion in part and denied the government's motion. *CFC Opinion*, 146 Fed. Cl. at 479. The Claims Court relied on *United States v. Spearin*, 248 U.S. 132 (1918), for the proposition that "when the government provides a contractor with defective, erroneous, or promised but missing specifications, 'the government is deemed to have breached the implied warranty that satisfactory contract performance will result from adherence to the specifications, and the contractor is entitled to recover costs proximately flowing from the breach.'" *CFC Opinion*, 146 Fed. Cl. at 482 (quoting *Franklin Pavkov Constr. Co. v. Roche*, 279 F.3d 989, 994–95 (Fed. Cir. 2002), which relies on *Spearin*, 248 U.S. at 136). The Claims Court stated that (1) "the Army's failure to provide the [TDP] represented an omission that prevented Tolliver from performing the contract as specified" and (2) that

failure "produced the circumstances that ultimately led to the *qui tam* suit and thus the costs incurred defending against it." *Id.* at 484. Although Tolliver had not mentioned *Spearin* or the implied warranty of performance in its motion for summary judgment, the Claims Court reasoned that Tolliver had presented "two distinct bases" for its claim before the contracting officer: first, that Tolliver was entitled to "an equitable adjustment . . . for allowable legal fees," and second, that the fees were "allowable under the contract and under FAR § 31.205-47." *Id.* at 483 (internal quotation marks and citations omitted). Recovery under *Spearin*, the Claims Court stated, was permitted as an equitable adjustment. *Id.* The Claims Court did not address recovery under the FAR. *Id.*

The United States moved for reconsideration, arguing that the claim before the contracting officer was not a claim for breach of the implied warranty of performance under *Spearin* and, hence, the Claims Court lacked jurisdiction under the CDA to adjudicate a claim of breach of the *Spearin*-recognized warranty. *Reconsideration Opinion*, 148 Fed. Cl. at 355. The Claims Court rejected the government's argument, stating that "Tolliver did not cite *Spearin* in its equitable reimbursement claim to the contracting officer, but its submission to that officer emphasized the failure by the government to provide the technical data package and the resulting direct relationship to the *qui tam* action." *Reconsideration Opinion*, 148 Fed. Cl. at 356. The Claims Court denied the motion for reconsideration, and upon determining that Tolliver's claimed damages (legal fees incurred in the *qui tam* action) were reasonable, the court entered a final judgment.

The United States timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

The United States argues that the Claims Court lacked jurisdiction to enter a judgment on a claim for equitable

adjustment based on a breach of the implied warranty of performance because such a claim was never presented to the contracting officer. We agree.[2]

"Whether the Court of Federal Claims had jurisdiction under the CDA is a question of law we decide de novo. A plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. We review a grant of summary judgment by the Court of Federal Claims de novo, drawing justifiable factual inferences in favor of the party opposing the judgment." *K-Con Bldg. Systems, Inc. v. United States*, 778 F.3d 1000, 1004 (Fed. Cir. 2015) (cleaned up).

The CDA mandates that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1). Thus, obtaining a final decision on a claim is a jurisdictional prerequisite to adjudication of that claim in the Claims Court. *See* 41 U.S.C. §§ 7104(b)(1), 7103(g); *Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014) ("It is a bedrock principle of government contract law that contract claims, whether asserted by the contractor or the Government, must be the subject of a contracting officer's final decision."); *K-Con*,

---

[2]   The United States also argues that the Claims Court abused its discretion in entering judgment based on a theory that was not raised by either party and that, in any case, the *Spearin* doctrine does not apply to the facts in this case. United States Opening Br. 14. Because we hold that the Claims Court lacked jurisdiction, we need not and do not decide those issues, though we note that the United States has raised significant questions about whether the *Spearin* doctrine applies here. We also do not address whether other theories of recovery might be applicable here and might yet be presented to the contracting officer.

778 F.3d at 1005 ("Jurisdiction requires both that a claim meeting certain requirements have been submitted to the relevant contracting officer and that the contracting officer have issued a final decision on that claim.").  The purpose of the requirement is "to create opportunities for informal dispute resolution at the contracting officer level and to provide . . . clear notice as to the" content of "contract claims." *Raytheon*, 747 F.3d at 1354 (internal quotation marks and citations omitted).

When a claim is presented in the Claims Court, we examine whether that claim is the "'same claim'" as the one presented to the contracting officer. *Id.* (quoting *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003)).  "A claim need not be submitted in any particular form or use any particular wording, but it must provide a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *K-Con*, 778 F.3d at 1005 (cleaned up).  We consider the remedies sought and the elements of the claims in assessing whether the sameness requirement is met. *Id.*  The focus is on whether the contracting officer was given "an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request." *Id.* at 1006.

Here, the claim that Tolliver presented to the contracting officer was, on its face, based on allowability under FAR § 31.205-47, not based on a breach of the implied warranty of performance.  Tolliver's initial statement requesting "an equitable adjustment and payment . . . for allowable legal fees," J.A. 109, was at so high a level of generality that, without further specification, it could cover materially distinct claims, and it did not give adequate notice of any specific claim.  And when Tolliver's letter to the contracting officer provided the narrowing specificity, the elaboration gave adequate notice only that a FAR claim was at issue, not that the elements of a breach of the implied warranty of performance were at issue.

Tolliver stated simply that "[a] contractor who success-fully defends a False Claim[s] Act action is entitled to re-cover its costs in defending the action, including legal fees, up to a maximum of 80% of those fees," and it cited for sup-port only FAR § 31.205-47 and *Fluor Hanford, Inc. v. United States*, 66 Fed. Cl. 230 (2005). J.A. 109. Tolliver's letter cited no basis other than the FAR regulation. The cited *Fluor Hanford* case involved only a FAR claim, not an implied-warranty-of-performance claim. Tolliver did not mention such a claim or authority for such a claim. More-over, Tolliver requested only $195,889.78, which was the 80% of incurred fees allowed by FAR § 31.205-47(e)(3) (where FAR § 31.205-47 applies), not the total amount of the incurred fees ($244,862.22) that might be recovered un-der a non-FAR claim. J.A. 110. Although Tolliver attached documents from the *qui tam* lawsuit to its letter, it did not call attention to the TDP obligation or the government's failure to provide the TDP; and although it noted that it "was forced to incur significant costs to defend itself for per-forming under the contract exactly how it was instructed to by the government," J.A. 110, nothing in the letter showed that this fact was not just background information, but instead a piece of a *Spearin* claim, whose elements Tol-liver did not set forth in substance or words. In these cir-cumstances, the contracting officer did not have "adequate notice," *K-Con*, 778 F.3d at 1005, that Tolliver was raising a claim based on the breach of the implied warranty of per-formance.

Contrary to Tolliver's contention, our decision in *Scott Timber Co. v. United States*, 333 F.3d 1358 (Fed. Cir. 2003), does not change the outcome here. In *Scott*, a company that had contracted with the U.S. Forest Service to harvest tim-ber in government forests sought consequential damages resulting from the government's suspension of those con-tracts. *Id.* at 1360–62. Before the contracting officer, the company contended that the Forest Service lacked author-ity under the contracts to suspend operations indefinitely.

*Id.* at 1362.  Before the Claims Court, the company elaborated on those broad original CDA claims and identified specific contract provisions that the government allegedly breached.  *Id.* at 1365–66.  We held that the claims before the Claims Court and the claims presented to the contracting officer were "essentially the same" claims, *id.* at 1366, noting that "they ar[o]se from the same operative facts, claim[ed] essentially the same relief, and merely assert[ed] different legal theories for that recovery," *id.* at 1365, and that the legal theories were at most "slightly different," *id.* at 1366.

In this case, the legal theories are not materially the same.  The claim presented to the contracting officer sought recovery of the expended legal fees as "allowable" costs under § 31.205-47.  J.A. 109.  That required showing (1) that Tolliver had incurred legal fees defending a proceeding listed in § 31.205-47(b) (here, a *qui tam* False Claims Act lawsuit); (2) that the costs were not rendered unallowable under § 31.205-47(b) because of the result of the proceeding; and (3) that Tolliver was seeking an appropriate percentage of its expended legal fees, limited by regulation to 80%.  FAR § 31.205-47(e).  By contrast, the general elements of the legal theory for the claim on which the Claims Court entered its judgment were (1) that the contract bound Tolliver to comply with a government-provided "design specification" that, if followed, would produce a "defective or unsafe" result, *Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341, 1349 (Fed. Cir. 2014); *see also White v. Edsall Constr. Co. v. United States*, 296 F.3d 1081, 1084 (Fed. Cir. 2002); (2) that Tolliver had complied with the specification or that compliance was commercially impossible, *see Al Johnson Constr. Co. v. United States*, 854 F.2d 467, 469–70 (Fed. Cir. 1988); and (3) that Tolliver incurred costs proximately caused by the defect in the specification, *see Franklin Pavkov Constr. Co. v. Roche*, 279 F.3d 989, 994–95 (Fed. Cir. 2002).

Without more than what Tolliver provided to the contracting officer, it cannot reasonably be demanded that the contracting officer have recognized that Tolliver was seeking a determination of the issues raised by a *Spearin* warranty-breach claim. Unlike in *Scott*, considering the two claims at issue here to be the same claim for jurisdictional purposes would "'subvert the statutory purpose of requiring contractors first to submit their claims to the [contracting officer]' to allow the [contracting officer] to receive and pass judgment on the contractor's entire claim." *Scott*, 333 F.3d at 1366 (quoting *Croman v. United States*, 44 Fed. Cl. 796, 801–02 (1999)).

Thus, the Claims Court lacked jurisdiction to enter judgment on a claim based on a breach of the implied warranty of performance, because that claim was not first presented to the contracting officer for a final decision.

## III

For the foregoing reasons, we vacate the judgment of the Claims Court. At least because the Claims Court did not address the allowability of the claimed fees under the FAR, we remand for such further proceedings as may be appropriate.

The parties shall bear their own costs.

**VACATED AND REMANDED**