ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Industrial Marine, Inc. | ) | ASBCA No. 63975 |
| | ) | |
| Under Contract No. N00383-21-P-P034 | ) | |

APPEARANCE FOR THE APPELLANT:        Mr. Justin Hawkins
                                                                    Vice President

APPEARANCES FOR THE GOVERNMENT:   Allison M. McDade, Esq.
                                                                     Navy Chief Trial Attorney
                                                                  Georgia E. Russell, Esq.
                                                                    Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WILSON
ON THE GOVERNMENT'S MOTION TO DISMISS

The government moves to dismiss a portion of appellant's complaint (Claim 2), asserting that the Board lacks jurisdiction over a portion of the appeal because the claim was not previously submitted to the contracting officer (CO) for final decision. We agree and grant the government's motion. Claim 2 is dismissed from appellant's complaint; the initial claim (Claim 1) remains.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. NAVSUP[1] Weapon Systems Support (NAVSUP WSS or the government) awarded Contract No. N00383-21-P-P034 to Industrial Marine, Inc. (IMI or appellant) on November 23, 2020, for the evaluation, repair and/or modification of shuttle assemblies (R4, tab 1 at 1-2).[2] A shuttle assembly is part of the "crucial shipboard system enabling the launch and/or recovery of aircraft" (R4, tab 1 at 4-5). The contract incorporated by reference Federal Acquisition Regulation (FAR) clause 52.233-1, DISPUTES (MAY 2014) (R4, tab 1 at 53).

---

[1] Naval Supply Systems Command (R4, tab 6 at 90).
[2] The Rule 4 file is Bates stamped with the prefix "IMI" followed by zeros. The prefix and leading zeros are omitted from citations to the Rule 4 file.

2.  IMI is represented in this appeal, *pro se*, by its Vice President, Mr. Justin Hawkins.  IMI submitted correspondence to the Board by email on September 20, 2024.  Mr. Hawkins stated in his email:

> We are a small business and have a dispute over a contract (N0038321PP034) regarding government delays.  It should have only taken a couple of months to complete, but instead has been strung out for 3.5 years due to delayed government responses (or no response at all), agency restructuring, disputes between government agencies, etc. and **the government will not agree to pay for the delay costs.**  There have been several contracting officer/specialists over this contract in the time since it was awarded, and finally after a year of complete silence from the government a Branch Chief/Supervisory Contracting Officer finally contacted us to cancel the contract.
>
> However, **she will not pay us for the delays nor discuss the extensive delay details we provided**, she unilaterally signed a mod without any discussion that ignores the costs we seek, she ignores all questions regarding why the government disappeared on this contract, and **will not issue a final decision notice**.
>
> How should we proceed from here?

(Bd. corr. email dtd. September 20, 2024) (emphasis added)  The Board docketed this as IMI's notice of appeal on September 24, 2024.

3.  The government's Rule 4 file did not include any tabs specifically identifying the claim at issue in this appeal (R4, index).  By Order dated October 30, 2024, the Board requested that the government identify the claim in its Rule 4 file or supplement the Rule 4 with the claim.  By correspondence dated November 12, 2024, the government responded stating that it did "not believe or concede that any of those documents constitute[d] a properly filed claim sufficient to establish Board jurisdiction" (Bd. corr. ltr. dtd. November 12, 2024).

4.  During a conference call conducted by the Board with the parties, Mr. Hawkins, identified the delay costs described in the emails at Rule 4, tabs 13 and 16 as IMI's claim.  The Board noted that appellant had requested contracting officer final decisions (COFDs) on two occasions in the record (R4, tab 14 at 168, tab 22 at 208) and the government confirmed on the call that no COFDs had been issued. The government maintained its position that there was no proper Contract Disputes

2

Act (CDA) claim submitted. The parties were ordered to brief the issue. (Mem. of Conference Call and Order dtd. November 20, 2024)

5. Prior to the due date for the government's opening brief, by correspondence dated December 17, 2024, the government stated it "d[id] not contest the submission of a claim" in the appeal and requested that the previously enacted stay be lifted (Bd. corr. ltr. dtd. December 17, 2024). This request was granted by Board Order dated December 19, 2024; appellant filed its complaint citing two claims on February 25, 2025. Claim 1 of appellant's complaint is for delay costs and Claim 2 is for "work that was removed from the scope" of the contract. (Compl. ¶ 1)

6. Tab 13 of the Rule 4 file includes a string of email correspondence between appellant's representative and the government from February 27, 2023, to July 14, 2023 (R4, tab 13 at 157-64). In the index submitted along with the Rule 4 file, the government described tab 13 as "7/14/23 - IMI explanation of 'inflation' calculation in proposal and email Correspondence (2/2023 - 7/14/23)" (R4, index). In the emails, the parties are discussing costs for specific shuttle repairs and a contract modification (R4, tab 13 at 157-64). In response to a May 1, 2023, email from the government's contract specialist "follow[ing] up in regards to getting the mod signed," Mr. Hawkins stated that "[t]he mod is missing the additional $10,228.20" (R4, tab 13 at 161). After some discussion about agenda setting and scheduling for a conference call, the government in an email dated June 29, 2023, requested an "event log" which Mr. Hawkins had "stated had specifics in regards to the Government delays "that "had led to needing [an] additional $10,228.20" (R4, tab 13 at 159). In an email to the government dated July 14, 2023, Mr. Hawkins described the following:

> Per your request, the inflation amount was calculated from the award date to now, and is detailed below. The percentage used was taken from the Bureau of Labor and Statistics (bls.gov).

|  | | |
|---|---|---|
| Eval of Shuttle 1716: | $24,656.71 |
| + Eval of Shuttle 2104: | $35,509.16 |
| Total: | $60,165.87 |
| 17% Inflation: | $10,228.20 |

> You are correct that a FFP contract does not allow us to recoup costs of our own doing (the work itself took longer than expected, scheduling conflicts, underestimated material/tooling/special processes, ran into trouble and/or made mistakes in manufacturing or repair, etc.); however, that is not the situation that we find ourselves in. The delays were caused by the Government, and are so

excessive that they are outside of any reasonable expectation that could have been factored into a bid. No margin of error could have accounted for what has transpired thus far, and the fault lies with the government alone, not the small business contractor.

Recap of the most notable delays:
*456 days From solicitation to award (For background. This figure is not used in the inflation calculation, nor the total delay time).*
*197 days From award to completed post award conference.*
*366 days From our initial pass/fail report to concurring REI.*
*347 days Time it took to get a set screw needed for the evaluation.*
*120+ days Days since full evaluation report was submitted, as of 7/7/2023.*
*885+days Cumulative Government delays since award, as of 7/7/2023.*

(R4, tab 13 at 157) (emphasis in original)

7. After some additional discussion and follow-up from Mr. Hawkins, the government responded on August 22, 2023: "The defin mod for SN 1716 was sent to you for signature on 12 July 2023" (R4, tab 14 at 168-69). Mr. Hawkins responded,

I know a mod was sent, but it does not address the other costs that we discussed . . . . [T]he only response to IMI's and DCMA's requests for status is to tell us about an unresolved mod predating the 7/14/23 email? The mod means nothing until we can come to terms, and we cannot do so without communication. If you still hold your position about the government not being responsible for any of their own delays then we respectfully request mediation. If you are not willing to begin that process then please issue a contracting officer's final decision notice so that we can file an ADR request or a full appeal through the ASBCA.

(R4, tab 14 at 168) The government responded on August 24, 2023, "We are reviewing your request for mediation. I contacted my OGC immediately after receiving your below email." (*Id.*)

4

8. Tab 16 of the Rule 4 file included email correspondence from the government's supervisory CO on July 29, 2024, and Mr. Hawkins' response. The CO informed Mr. Hawkins that the government "has made the decision to not proceed with repairs under this contract and is requesting Industrial Marine Inc. to return the units in as is condition." The email continued, "[a] modification will be sent this week with definitized evaluation prices set forth in the contract on page 3 and the location where the units shall be returned." (R4, tab 16 at 173-74) Mr. Hawkins responded with an updated price breakdown and reiterated IMI's complaints of government delay:

> Could you shed some light as to why we've gone almost another year without hearing from anyone at NAVSUP? DCMA has had no response as well after multiple attempts to contact NAVSUP regarding this contract and its delays. This brings the total government delays to roughly 3.5 years, or 1,273 days, and I'm sure we're all eager to know how and why something like this can happen.
>
> Regarding the price, the current total is as follows.
>
> Evaluation of Shuttle 1716: $24,656.71
> Evaluation of Shuttle 2104: $35,509.16
> Delay and Disruption, Inflation: $15,030.32
> Mod P0002: $2,100.00
> Mod P0003: $1,350.00
> **Total: $78,646.19**

(R4, tab 16 at 173) (emphasis in original)

9. By email dated August 8, 2024, the supervising CO emailed IMI a modification stating, "NAVSUP WSS is able to definitize the contract at a total price of $63,615.87" which included the evaluation of two shuttles, among other items. The CO further explained that the government was "unable to process IMI's request for additional costs based on the information provided thus far. Government [d]elay is not merely every instance where something takes longer than expected." (R4, tab 22 at 214) The CO continued by explaining what IMI needed to provide to support its allegation of government delay and gave IMI a deadline to provide supporting documentation (*id.*). Mr. Hawkins responded on August 19, 2024, "[a]attached is the delay detail sheet that has been shared many times, and has now been updated to todays [sic] date" (R4, tab 22 at 209-10). The supervising CO responded on August 23, 2024, that it was received and she would "be in contact." The next email in the string is from the supervising CO on September 5, 2024, stating "[a]ttached is modification P00006 which was issued in accordance with WSSTERMHZ01(a)(3)."

5

Mr. Hawkins responded requesting a COFD on the same day. The supervising CO again responded that same day saying, "I am unable to issue a contracting officer's final decision." (R4, tab 22 at 208-09)

10. In its motion, the government describes the "initial claim presented to the [CO]" at R4, tab 13 as, "an additional amount of $10,228.20 [that] was owed to appellant, indicated in the email as '17% inflation.' Tab 16 of the Rule 4 file provides the appellant's revised claim amount of $15,030.32, described as 'Delay and Disruption, Inflation,' which was presented to the Contracting Officer." (Gov't mot. at 2) (internal citations and footnote omitted)

11. Appellant's complaint is a short four paragraph document describing two "claims." The first paragraph of the complaint describes alleged government caused delay, "[a]ll of which has been detailed thoroughly and was included in pages 190-94 of the agency's Rule 4 file" (compl. ¶ 1). "Claim 1 - $12,556.90+" of appellant's complaint reads in full:

> The government failed its duty not to prevent, hinder, or delay IMI's performance thus causing a severe delay in payment for the work that was eventually completed. A factor for inflation is typically included in contracts that span more than a year, and certainly for contracts lasting 4 years. Since this was reasonably expected to last no more than a few months, IMI requests an additional $12,556.90 to cover the cost of inflation (20.87% of $60,165.87, from the 11/2020 award date to the 07/2024 notice of the government's decision to not proceed with repair, calculated at BLS.gov) plus interest as determined under the CDA.

The next paragraph of appellant's complaint describes "Claim 2 - $191,683.65+," the subject of the government's motion to dismiss, which reads in full:

> The government originally put out a solicitation to blindly overhaul 13 launch shuttles not knowing the details of their condition, but the order was changed to evaluate only 2 shuttles at a time and to provide a repair cost based on the detailed evaluation report, at which point a mod would be issued to include those costs and IMI would proceed with the repair so long as the units were not BER (beyond economic repair, or 75% of the cost new). After a year of complete silence from the agency, and after all attempts by IMI and DCMA to contact the agency were unsuccessful, a

6

new contracting officer suddenly appears and **terminates the repair portion of the contract without any explanation or negotiation. IMI requests $191,683 to cover the work that was removed from the scope (pages 99-102 of the Rule 4 file) without cause and against the BER terms of the contract plus interest as determined under the CDA.**

(Compl. ¶ 1) (emphasis added)

12. The only reference the Board finds in the Rule 4 file to the $191,683.65 amount referenced in Claim 2 of the complaint is in a proposal IMI submitted for the cost to repair one of the shuttles dated March 8, 2023 (R4, tab 7 at 91, 95-96, 100).

13. The government's motion to dismiss followed the filing of appellant's complaint on March 11, 2025.

<u>DECISION</u>

*Parties' Arguments*

The government moves to dismiss for lack of jurisdiction Claim 2 of appellant's complaint arguing that it was both "never presented to the [c]ontracting [o]fficer for [a final] decision" and is based on "a materially different legal theory from the claim that was presented or is otherwise before the Board" (gov't mot. at 2). Appellant responds that Claim 2 was deemed denied and the Rule 4 file supports that the claim was presented to the CO (app. resp.at 1). Appellant's response to the government's motion is a single page with three numbered paragraphs. None of the paragraphs cite as support for the second claim the pages of the March 8, 2023 proposal described above (SOF ¶ 12), nor are there citations to the pages referenced in Claim 2 of the complaint for the "work that was removed from the scope" of the contract "without cause and against . . . the contract . . . ." (compl. ¶ 1). The government replies that Claim 2 was never submitted to the CO and that appellant's response "does not present any evidence that shows it submitted such a claim" (gov't reply at 1). The government continues, asserting that the citations to the Rule 4 file in appellant's response do not establish that a certified claim for the amount described in Claim 2 was submitted to the CO (*id.* at 2).

*Standard of Review*

IMI bears the burden of establishing the Board's jurisdiction by a preponderance of the evidence. *See Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 775 (Fed. Cir. 2021); *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816 (citing *Hanley Indus., Inc.*, ASBCA No. 58198, 14-1 BCA ¶ 35,500 at 174,015). *Pro*

7

*se* appellants, like IMI, "are held to a less stringent pleading standard than those represented by counsel." *Elizabeth Constr. Co.*, ASBCA No. 60723, 17-1 BCA ¶ 36,839 at 179,519 (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  However, *pro se* appellants, are "not exempt from meeting jurisdictional prerequisites."  *Id.* (citing *Henke v. United States*, 60. F.3d 795, 799 (Fed. Cir. 1995)).

*Jurisdiction*

The CDA requires all claims by contractors to be presented to the CO for issuance of a final decision for the Board to have jurisdiction over such appeals. 41 U.S.C. §§ 7103-7104; *SkyQuest Aviation, LLC*, ASBCA No. 62586, 21-1 BCA ¶ 37,784 at 183,374 (citing *Islands Mech. Contractor, Inc.*, ASBCA No. 59655, 17-1 BCA ¶ 36,721 at 178,809).  Claims in excess of $100,000 must also be certified. 41 U.S.C. § 7103(b).  Claims are not required to take a specific form, but they must be made in writing.  41 U.S.C. § 7103(a)(2).  "A claim presented to the Board will be considered the same as the claim presented to the contacting officer if it arises from the same set of common or related operative facts and requests the same or similar relief."  *Rsch. Analysis & Maint., Inc.*, ASBCA No. 63259, 23-1 BCA ¶ 38,450 at 186,871 (citing *Parwan Grp. Co.*, ASBCA No. 60657, 18-1 BCA ¶ 37,082 at 180,495).

The CDA does not define a claim, so we look to the FAR.  *Case Healthcare Sols., Inc. d/b/a Case HCS of Reston, Va.*, ASBCA No. 63051, 24-1 BCA ¶ 38,602 at 187,654.  The contract incorporated the disputes clause by reference (SOF ¶ 1) which defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract."  The clause continues, "a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under [the CDA] until certified.  A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under [the CDA]." 48 C.F.R. § 52.233-1.  The Board determines "jurisdiction at the time the appellant filed its notice of appeal."  *JAAAT Tech. Servs., LLC*, ASBCA No. 61792 *et al.*, 21-1 BCA ¶ 37,878 at 183,943 (citing *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)).

Here, appellant has not met its burden to establish jurisdiction over Claim 2 of its complaint.  In its response to the government's motion, appellant contends, without providing support, that the Board has jurisdiction because Claim 2 was deemed denied (app. resp. at 1).  Appellant fails to cite any correspondence in the Rule 4 file addressing the work that allegedly was removed from scope (*id.*).  The pages of the Rule 4 file appellant cites in its complaint as support for Claim 2 are two portions of the proposal IMI submitted in March 2023 for costs to repair one of the shuttles

(SOF ¶ 12); there are no documents in the record that establish the government accepted this proposal and directed IMI to complete that work.  It is also not clear from the record, appellant's notice of appeal, the complaint, or comments from appellant's representative in a conference call with the Board that appellant intended to appeal from the alleged contract termination (SOF ¶¶ 2, 4, 6-8, 11).  Though contractors can appeal a claim to the Board on a deemed denial basis, as the government notes, for the Board to have jurisdiction, such an appeal still must be based upon a proper CDA claim (gov't mot. at 3 n.3).  This is because jurisdiction based on a deemed denial is predicated upon the CO's *inaction* on a proper CDA claim submitted by a contractor for a final decision.  41 U.S.C. § 7103(f)(5).

We need not, and do not, determine the sufficiency of the claim raised by appellant related to delay ("Claim 1") to determine that Claim 2 of the complaint was not presented to the CO for decision prior to being raised before the Board in the complaint.  The record contains multiple emails and instances in which appellant requested amounts of $10,228.20 and $15,030.32 for inflationary costs it alleges are due to government caused delay and the corresponding requests for COFDs when these delay costs were not included in proposed contract modifications (SOF ¶¶ 2, 6-9).  Having found no evidence in the record that a properly certified claim for $191,683.65 was submitted, and having no evidence presented with appellant's response to the government's motion that such a claim was presented to the CO, the Board lacks jurisdiction over Claim 2.  *Cobeal Consulting Grp.*, ASBCA No. 63815, 25-1 BCA ¶ 38,742 at 188,340-41.

Moreover, if Claim 2 is a new claim that has not been previously submitted to the CO, the Board looks to see if the claims referred to in its complaint revolve around the same set of operative facts and whether similar relief is requested.  *See Rsch. Analysis & Maint., Inc.*, 23-1 BCA ¶ 38,450 at 186,871.  Though appellant provides very little analysis or support in its filings with the Board, it is apparent that Claim 2 requests payment for work that was not completed ("removed from scope") while Claim 1 requests delay costs for work that was completed, which appellant describes as a "delay in payment for the work that was eventually completed" (SOF ¶ 11).  "[W]ork that was removed from the scope" due to a termination of part of the contract is a substantially different set of operative facts than "delay" and a request for inflationary costs due to such alleged delay (*id.*).  Thus, we lack jurisdiction over Claim 2.

Lastly, even if Claim 2 had been presented to the CO, the claim was not certified.  Claim 2 requests $191,638 — over the $100,000 threshold the CDA requires for certification of claims (SOF ¶ 11).  41 U.S.C. § 7103(b).  Unlike a defective certification, claims completely lacking certification cannot be remedied while pending at the Board and must be dismissed for lack of jurisdiction.  *Cobeal*

9

*Consulting Grp.*, 25-1 BCA ¶ 38,742 at 188,341 (citing *Eurostyle Inc.*, ASBCA No. 45934, 94-1 BCA ¶ 26,458 at 131,654).

CONCLUSION

We grant the government's motion and dismiss Claim 2 from appellant's complaint. Claim 2 is struck from the complaint for lack of jurisdiction; Claim 1 remains before the Board. The stay enacted pending the outcome of this jurisdictional motion is lifted and the government shall file its answer within 30 days of receiving this decision. The government may answer in the narrative.

Dated: May 5, 2026

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63975, Appeal of Industrial Marine, Inc., rendered in conformance with the Board's Charter.

Dated: May 5, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

11