ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| ECC International, LLC | ) | ASBCA No. 60167 |
| | ) | |
| Under Contract No. W912DQ-11-C-4009 | ) | |

APPEARANCES FOR THE APPELLANT:   R. Dale Holmes, Esq.
Amy M. Kirby, Esq.
  Cohen Seglias Pallas Greenhall & Furman PC
  Philadelphia, PA

APPEARANCES FOR THE GOVERNMENT:   Michael P. Goodman, Esq.
  Engineer Chief Trial Attorney
Sarah L. Hinkle, Esq.
Matthew Tilghman, Esq.
Michael E. Taccino, Esq.
Kathryn G. Morris, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Middle East
  Winchester, VA

OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN ON THE
GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

On October 29, 2021, the government (United States Army Corps of Engineers or USACE) filed a motion to dismiss ASBCA No. 60167 for lack of subject matter jurisdiction. The motion to dismiss ASBCA No. 60167 for lack of jurisdiction contends that ECC International, LLC (ECCI) certified claim submitted to the contracting officer on June 15, 2015, contained two separate claims (breach of implied warranty of specifications and breach of the duty of good faith and fair dealing), but did not demand payment of a sum certain for each claim. USACE further asserts that an additional two claims (superior knowledge and commercial impracticability) were asserted for the first time in ECCI's complaint in ASBCA No. 60167, which was filed with the Board on September 22, 2015. As to these two additional claims, USACE contends that they are new claims that were never presented to the contracting officer for decision.

For the reasons discussed below, the Board denies the motion to dismiss ECCI's claims of breach of warranty of specifications, breach of the implied duty of good faith and fair dealing, and breach of the duty to disclose superior knowledge. The Board grants the motion to dismiss ECCI's claim of commercial impracticability.

<u>STATEMENT OF FACTS FOR PURPOSES OF THE MOTION</u>

ECCI submitted a certified claim arising from a contract for construction of a Military Police School and a Signal School at Camp Shaheen, Afghanistan, on June 15, 2015. ECCI's certified claim reads in relevant part as follows:

> This design-built [sic] Contract was awarded on April 8, 2011, and required completion within 365 days. The Contract was awarded for a price of $27,613,870.20. Prior to advertising this contract, the U.S. Army Corps of Engineers (USACE) performed a "Biddability, Constructability, Operability Evaluation (BCOE)" on this project. The preparation of a BCOE is required by internal USACE regulations. The purpose of a BCOE is for professional engineers in USACE to assure that the terms of the solicitation are biddable and constructable.
>
> ***[T]he sister project for the MP/Signal School Contract, the Group A Expansion Contract, which was awarded a month after the MP/Signal School Contract for $29,842,615.36, had a BCOE that would require a 550 day POP. Therefore, USACE was aware, based upon its own internal engineering analysis, in its contemporaneous BCOE, that the MP/Signal School project was not constructable within the terms of the solicitation, which required performance within 365 days.
>
> By preparing contract specifications the government impliedly warrants that if the contractor complies with the specifications, satisfactory performance will result. The government's implied warranty of specifications includes the specified time for completion of the work. [Citation omitted] The government breached its warranty of the specification when it advertised and awarded [the contract] with a 365 day duration, because it had evidence establishing that the project required 600 calendar days.
>
> The Government's conduct also amounts to a breach of its duty of good faith and fair dealing for the following reasons. The government knew of the fact that the 365 day schedule was unreasonably short, yet the Government took no action to cooperate with ECCI and extend the schedule to a reasonable length. Instead, USACE continually threatened ECCI with

2

interim unsatisfactory ratings, demanded "recovery schedules" and otherwise forced ECCI to accelerate in unreasonable ways. The USACE actions were the opposite of cooperation on the schedule issues. ***

[paragraph omitted]

Based on the above, there is clear, unequivocal evidence that USACE breached its warranty of the adequacy of the specifications and its duty of good faith and fair dealings related to the required period of performance of 365 in the original Contract, and evidence of this breach has been in USACE's contract files for several years, both before award of the Contract and during performance.

As a direct result of USACE's breach of its warranty of the adequacy of specifications and its duty of good faith and fair dealing, ECCI has suffered breach damages of $5,584,820.

(R4, tab 75)

ECCI's appeal from a deemed denial of its claim was docketed at the Board on September 10, 2015, as ASBCA No. 60167. On September 24, 2015, ECCI filed a consolidated complaint in ASBCA No. 60167 and two other pending consolidated appeals. Paragraphs 1-29 of its complaint set forth the factual allegations underlying Counts I through IV of the complaint that pertain to ECCI's BCOE claim. These factual allegations are as follows: that USACE knew prior to issuing the solicitation in February of 2011 that 550 to 600 days was a more appropriate period of performance for both the MP/Signal School contract and a similar Camp Shaheen contract, the Group A Expansion, yet both solicitations were issued with periods of performance of 365 days; that USACE never informed ECCI, either prior to award or during contract performance, of the internal analysis concluding that 550-600 days was a more appropriate period of performance; that during contract performance a professional scheduler under contract to USACE informed USACE contract administration personnel in May of 2012 and August of 2012 that projects of similar size and type required 550 to 600 days to perform; that USACE personnel never informed ECCI of this information and failed during contract performance to provide any relief by granting extensions to the 365-day period of performance.

Building on this factual predicate, Count I alleges that the contract was commercially impracticable to perform in 365 days and ECCI is entitled to an equitable adjustment for the expense incurred in trying to meet an impossible period of performance. Count II alleges that the 365-day period of performance was a defective

3

specification because the contract could not be performed in 365 days, and USACE breached its warranty of the adequacy of the contract specifications. ECCI adds in this Count that the specifications were otherwise deficient because they did not adequately provide for fast track and coordination procedures sufficient to efficiently manage accelerated construction, and that USACE mismanaged the design process by combining the designs for MP/Signal School and Group A, but then ordering that the approved designs be split apart, causing further delays to performance. Count III alleges that USACE's pre-award BCOE provided it with the vital knowledge that 550 to 600 calendar days were necessary to perform the contract, USACE was aware that ECCI did not possess this knowledge, ECCI was misled by the contract specifications to believe that the contract could be performed in 365 days, and USACE failed to share with ECCI its superior knowledge that 550 to 600 days were necessary to perform the contract. Lastly, Count IV alleges that USACE breached its implied duty of good faith and fair dealing by concealing its knowledge that 550-600 days were necessary to perform the contract, both pre-award and during contract performance, and by failing to extend the contract performance period to reflect a realistic period of performance, thereby depriving ECCI of the expected fruits of the contract. The relief requested is $5,584,820 in damages.

A two-week hearing encompassing this appeal and two other ECCI appeals was conducted from May 8 to May 19, 2017. Post-hearing briefing was completed on April 6, 2018.

DISCUSSION

Contentions of the Parties

The government's contention that ECCI presented two separate claims (breach of implied warranty of specifications, and breach of the duty of good faith and fair dealing) in its June 15, 2015 certified claim relies on the proposition that there exist separate sets of unrelated operative facts in support of each of the allegedly separate claims. Thus, the government says that ECCI presented three operative facts in support of its claim for breach of warranty of specifications: (1) USACE conducted a BCOE review of the MP/Signal School project prior to the solicitation's release; (2) after contract award, the government's contracted scheduling engineer advised USACE that the typical period of performance for similar projects is closer to 600 days; (3) the BCOE review conducted for the Group A project recommended a period of performance of 550 days. (Gov't mot. at 7-8) Whereas, in support of the breach of the duty of good faith and fair dealing claim, the government says ECCI introduced new operative facts that bear no relation to its breach of the warranty of specifications claim: (1) after award, USACE refused to reasonably extend the period of performance; and (2) USACE continually threatened ECCI with interim unsatisfactory performance ratings and demanded that ECCI submit "recovery" schedules (gov't mot. at 8-9). The government asserts that all of the operative facts in support of ECCI's breach of the duty of good faith and fair dealing claim take

4

place *after* award, whereas the operative facts in support of its breach of warranty claim take place *before* and *after* award (gov't mot. at 9) (emphasis in original). Therefore, it argues, the claims are separate and unrelated and, since ECCI did not claim a sum certain for each claim, but only one sum for both claims, its certified claim is not valid and cannot support the jurisdiction of the Board (gov't mot. at 9-10).

The government also contends that ECCI introduced two new claims in its September 22, 2015 complaint—breach of contract by failure to disclose superior knowledge, and commercial impracticability. It asserts that each of these relies on operative facts different from each other and from what was contained in the certified claim. (Gov't mot. at 10-15) Because (1) ECCI has not demanded a sum certain for any of its four claims, and (2) the two new claims in the complaint were never provided to the contracting officer for decision, the government says, the Board lacks jurisdiction to consider or decide them (gov't mot. at 15-19).

We note that in post-hearing briefing, the government argued that the Board has jurisdiction over the ECCI's claims of breach of warranty of specifications and breach of the duty of good faith and fair dealing, but not the two "new" claims:

> ASBCA No. 60167, as argued in ECCI's post-hearing brief, with the exception of the allegations that the Government breached an implied warranty of specifications and the duty of good faith and fair dealing through the determination of the Contract POP, failure to extend the POP, allegedly threatening ECCI with unsatisfactory performance ratings, demanding recovery schedules, and forcing ECCI to accelerate, is not properly before the Board.

(Gov't br. at 103)

ECCI takes issue with the government's argument that its certified claim presents separate sets of facts in support of different theories of recovery, and states that the certified claim sets forth a single set of operative facts that supports multiple theories of recovery. That single set is composed of the following operative facts stated in the claim: (1) USACE was aware, before and after award, that the project would take 600 days to complete; (2) USACE advertised the project with a 365 day period of performance, and without revealing its knowledge that 600 days was needed for performance; (3) evidence of the unreasonably short period of performance was in USACE's contract files before and after award for several years; (4) USACE possessed a BCOE on a sister project that demonstrated that the MP/Signal School contract "was not constructable within the terms of the solicitation" and reflected an impossibly short schedule; and (5) despite knowing of the impossibly short schedule both before and after award, USACE continually

5

threatened ECCI with interim unsatisfactory ratings, demanded "recovery" schedules, and otherwise forced ECCI to accelerate in unreasonable ways. (App. opp'n at 8).

ECCI argues that the original certified claim supports not just the two theories of recovery expressly articulated in the claim, breach of the warranty of specifications and breach of the implied duty of good faith and fair dealing, but also its superior knowledge and commercial impracticability theories of recovery. As to superior knowledge, ECCI points to the claim's language regarding USACE's possession of pre-award knowledge that the 365-day period of performance was unreasonably short and that 600 days was required and its advertisement of the project, nevertheless, with the 365-day period of performance and without revealing its pre-award knowledge. As to commercial impracticability, ECCI points to the claim's statements that USACE had a pre-award BCOE that reflected an impossibly short schedule, and that the project was "not constructable within the terms of the solicitation." (App. opp'n at 12-13) ECCI further points out that the USACE contracting officer who received the certified claim and read it, but did not issue a final decision on it, testified at the hearing in this appeal without ever saying that he had any issue in understanding the basis for or amount of ECCI's claim (app. opp'n at 2).

Thus, ECCI states, each theory of recovery in its certified claim, if found to be valid by a contracting officer or the Board, supports the recovery of the $5,584,820 of damages claimed. It is not possible to differentiate or divide the damages, because they are the same breach damages, caused by USACE's failure to disclose its pre-award knowledge that the period of performance was unreasonably or impossibly short and its enforcement of the unreasonably short period during contract performance. (App. opp'n at 13-14) Similar to the facts considered in *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365-1366 (Fed. Cir. 2003), in this case ECCI gave the contracting officer clear notice of a purported breach of contract, seeks the same remedy requested from the contracting officer, namely consequential damages for the breach, and posed slightly different legal theories for the breach. The same or related operative facts support each theory of breach, namely the short performance period, USACE's withholding of the BCOE conclusions about that performance period, and USACE's failure to cooperate with ECCI in either achieving the schedule or providing relief from it. The additional facts uncovered by ECCI in discovery, presented at the hearing, and argued in the post-hearing briefing, all go directly to prove these fundamental factual elements set forth in ECCI's certified claim. (App. opp'n at 16-18)

Jurisdiction of the Board

An issue of the Board's jurisdiction may be raised at any time prior to a final decision. *B.W. Hovermill Co.*, ASBCA No. 5570, 59-2 BCA ¶ 2439. The claimant bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1004 (Fed. Cir. 2015); *Suodor*

6

*Al-Khair Co. – SAKCO for General Trading*, ASBCA Nos. 59036, 59037, 15-1 BCA ¶ 35,964 at 175,725.

In order to properly raise a claim under the Contracts Disputes Act (CDA), a contractor must present "in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Scott Timber*, 333 F.3d at 1365 (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). The requirements of the CDA are jurisdictional prerequisites to any appeal. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). Therefore, the contractor must have submitted a valid claim and received a contracting officer's decision on that claim before it may avail itself of the Board's jurisdiction. *Id.* A claim is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. . . ." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (quoting FAR 33.201).

Any action before the Board under the CDA must be "based on the same claim previously presented to and denied by the contracting officer." *Scott Timber*, 333 F.3d at 1365. "Identifying what constitutes a separate claim is important. We have long held that the jurisdictional standard must be applied to each claim, not an entire case; jurisdiction exists over the claims which satisfy the requirements of an adequate statement of the amount sought and the basis for the request." *K-Con Bldg. Sys.*, 778 F.3d at 1005 (citing *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1281 (Fed. Cir. 1985)). "Our longstanding demand that a claim adequately specify both the amount sought and the basis for the request implies that, at least for present purposes, we should treat requests as involving separate claims if they *either* request different remedies (whether monetary or nonmonetary) *or* assert grounds that are materially different from each other factually or legally." [Citations omitted] "This approach, which has been applied in a practical way, serves the objective of giving the contracting officer an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request." *Id.* at 1005-06 (emphasis in original).

This standard does not require rigid adherence to the exact language or structure of the original administrative CDA claim. *Scott Timber*, 333 F.3d at 1365. Thus, even though claims may be styled differently, we may determine that they are the same if they "arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery." *Id.* Thus, claims seeking different types of remedy, such as expectation damages versus consequential damages, may be determined to be separate claims. *K-Con Bldg. Sys.*, 778 F.3d at 1006. "In a similar vein, merely adding factual details or legal argumentation does not create a different claim, but presenting a materially different factual or legal theory (e.g., breach of contract for not constructing a building on time versus breach of contract for constructing with the wrong

7

materials) does create a different claim." *Id.* In *Tolliver Grp., Inc. v. United States*, 20 F.4th 771 (Fed. Cir. 2021), the court determined that a claim that costs of legal defense were allowable under FAR Part 31 was not the same as a claim that the government's breach of the implied warranty of performance caused damages to Tolliver in the amount of the legal costs it incurred. The court reached its conclusion through an analysis of the remedies sought and the elements of the claims, holding that the legal theories of recovery were materially different due to their differing elements, and that the contracting officer could not have been reasonably expected to recognize that a breach of warranty claim was contained in the certified claim that was submitted for decision.

The Certified Claim

We disagree with the government's current contention that we do not have jurisdiction over ECCI's breach of warranty of specifications and breach of the implied duty of good faith and fair dealing claims contained in ECCI's certified claim because they are separate claims as to which ECCI has failed to demand sums certain. It is evident from the certified claim that ECCI intended to file one claim with at least two theories of recovery. The government agreed with that view in its post-hearing brief. But, more importantly, ECCI's breach of warranty of specifications and duty of good faith and fair dealing theories of recovery rely on common or related operative facts, and they seek the same remedy, $5,584,820 in damages.

When the government contracts for supplies to be manufactured in accordance with government specifications, there is an implied warranty that if the specifications are followed, a satisfactory product will result. If the warranty is breached, i.e., the specifications are defective, a plaintiff is entitled to damages equal to the amount expended in trying to comply with the defective specification. *Hol-Gar Mfg. Corp. v. United States*, 360 F.2d 634, 639 (Ct. Cl. 1966). A necessary element of breach of the implied warranty of specifications is proof that the requirement to comply with the defective specification caused the contractor to suffer damages such as additional cost or schedule disruption. *See, e.g., Santa Fe Engineers, Inc.*, ASBCA No. 25549, 82-2 BCA ¶ 15,982 at 79,254.

To determine whether there has been a breach of the implied duty of good faith and fair dealing, there is a focus on whether a party has acted in accordance with the purpose of the contract, or has interfered with the other party's performance, or acted in such a way as to destroy the other party's reasonable expectations as to the fruits of the contract. *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014). While the duty of good faith and fair dealing does not arise until after award of a contract, "[t]his does not suggest that pre-contract actions by the government cannot bear on the question of whether the government has complied with its obligations that are eventually imposed by the contract." *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012).

8

Central to ECCI's certified claim are the allegations of USACE's pre-award knowledge that it had never constructed a project of similar size in Afghanistan in less than 550-600 days, and that its scheduling engineers thought 365 days would be difficult or impossible to achieve, coupled with the allegation that after award and during performance, the government failed to cooperate with ECCI in either achieving the 365 days or in providing relief from it. The government's pre-award knowledge is an operative fact in both the breach of warranty and breach of implied duty theories, since it bears on the defectiveness of the period of performance (which ECCI argues is a contract specification), as well as on whether the government breached its duty following award. *Scott Timber*, 692 F.3d at 1372.

Similarly, the government's alleged actions after award bear on both theories, breach of warranty of specifications and breach of the implied duty of good faith and fair dealing. Post-award government actions, including failure to correct or extend the period of performance, or to cooperate in achieving it, go both to the damages suffered as a result of attempting to comply with the government's defective specification (period of performance), and to whether the government failed to cooperate, or actively interfered with, ECCI's performance of the contract. The facts enumerated in ECCI's certified claim are relevant to both theories of recovery, and we are satisfied that the contracting officer was adequately apprised of both the amount of, and the two articulated bases for, ECCI's claim.

As is to be expected, by the time discovery was complete and this appeal was the subject of a two-week trial, ECCI had added factual details to the allegations contained in its certified claim. Those additional factual allegations include the following: (1) USACE's pre-award knowledge that on the sister project, Group A Expansion, a formal schedule analysis (not done for the MP/Signal School project) recommended 541 days. When asked if that period could be reduced, the scheduler said it would require three civil crews working simultaneously and two 10-hour shifts. USACE knew that two 10-hour shifts would not be allowed, but went ahead and imposed a 365-day period of performance on both the Group A project and the MP/Signal School project; (2) USACE failed to share any of its pre-award knowledge with ECCI, either before award or during performance of the contract; (3) USACE was not prepared to implement the contract's austere design standards on the MP/Signal School project, and insisted ECCI follow the nonstandard conceptual drawings in the contract that were contrary to the current austere standards guidance and more time consuming to meet; nor did USACE cooperate with ECCI to take other measures reasonably necessary to achieve completion of the project in 365 days, including securing unrestricted access to the work site and unrestricted working hours. These are additional factual details in support of the two theories of recovery presented to the contracting officer and do not constitute new claims. *K-Con Bldg. Sys.*, 778 F.3d at 1006.

ECCI's "New" Theories of Recovery

We now turn to ECCI's additional two theories of recovery that the government argues were presented for the first time in its complaint, commercial impracticability and failure to disclose superior knowledge. A contract is commercially impracticable if its performance would cause extreme and unreasonable difficulty, expense, injury or loss to one of the parties. *Raytheon v. White*, 305 F.3d 1354, 1367 (Fed. Cir. 2002). While commercial impracticability may excuse a party's nonperformance, in government contracts, it has also been treated as a constructive change to the contract because it imposes substantial unforeseen costs on the contractor, entitling the contractor to an equitable adjustment. *Id.*

In *Foster Wheeler Corp. v. United States*, 513 F.2d 588, 598 (Ct. Cl. 1975), the court found a contract to deliver a boiler in 13 months to be commercially impracticable because meeting the specification requirement would have required an expensive research and development effort and taken a minimum of 19-24 months altogether. The degree of added expense to make a contract commercially impracticable to perform is substantial, so great that it renders all means of performance "commercially senseless." *Raytheon*, 305 F.3d at 1367. Under this standard, a cost overrun of 57 percent in Raytheon was not sufficient to render the contract commercially impracticable. *Id.* at 1368. *See also Commissioning Sys. Global, LLC*, ASBCA Nos. 57429, 57494, 13 BCA ¶ 35,355 at 173,532 (only a loss substantially greater than the 30.4% increase in expense alleged by CSG would constitute commercial impracticability).

In alleging commercial impracticability, ECCI is not seeking to be relieved from performing the contract. In fact, it did complete performance of the contract, and seeks an equitable adjustment for the added expense of doing so. ECCI argued in post-hearing briefing that the contract was impracticable at the time of award due to the following facts: USACE lacked the manpower or intent to implement the updated version of austere standards in the contract; USACE lacked the manpower to engage in fast track design review; USACE was not prepared to have personnel on site to engage in the real time decision-making needed for accelerated construction; USACE was not prepared to adapt its enforcement driven model of contract administration to the cooperative model needed for accelerated construction; USACE knew, but did not disclose, that access to the work site and working hours would be restricted. ECCI also emphasizes that it reasonably relied on USACE's stated intent to accelerate construction, its inclusion of austere standards in the contract, and its express intent to prioritize speed over quality or cost, to conclude that the short period of performance could be met. (App. br. at 131-135) ECCI did not address the substantial expense or loss aspect of impracticability in its brief.

The claim presented to the contracting officer focused on the allegations that the government knew the period of performance of 365 days was unrealistically short, and

that after award the government failed to cooperate with ECCI either to achieve that period of performance, or to extend it to a more realistic period. As ECCI argues in its opposition to the government's motion to dismiss, the facts cited by ECCI in support of its commercial impracticability claim are the same as, or related to, the facts cited in its certified claim. However, we must also consider the elements of this theory of recovery and whether they are materially different from what was presented to the contracting officer. ECCI argues that the contracting officer was on notice of its commercial impracticability theory of recovery because the certified claim referred to "an impossibly short schedule" and stated that the project "was not constructable within the terms of the solicitation" (app. opp'n at 12-13).

We conclude that ECCI's certified claim did not alert the contracting officer to a claim of impracticability, because a key element of this theory of recovery is added expense so substantial that any means of rendering performance would be commercially senseless. This is an element not present in any of the other theories of recovery advanced by ECCI, and it is also absent from ECCI's certified claim. The damages sought were $5,584,820, approximately 20 percent of the contract price at award, which does not approach the level of expense or loss required under the applicable case law. Moreover, due to the material difference between the elements of this theory of recovery and ECCI's other theories of recovery, we conclude that ECCI's commercial impracticability theory of recovery is a new, separate claim that was not presented to the contracting officer for decision, and thus we lack jurisdiction under the Contract Disputes Act to adjudicate it. *Tolliver Grp.*, 20 F.4th at 777.

Finally, we examine ECCI's claim of failure to disclose superior knowledge, the second of the two theories of recovery, the government argues were raised for the first time in ECCI's complaint. The doctrine of superior knowledge is generally applied to situations where (1) a contractor undertakes to perform without vital knowledge of a fact that affects performance costs or duration, (2) the government was aware that the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire, and (4) the government failed to provide the relevant information. *Hercules, Inc. v. United States*, 24 F.3d 188, 196 (Fed. Cir. 1994); *Scott Timber*, 692 F.3d at 1373.

As alleged in ECCI's complaint, the facts supporting failure to disclose superior knowledge are: that USACE's pre-award BCOE provided it with the vital knowledge that 550 to 600 calendar days were necessary to perform the contract, USACE was aware that ECCI did not possess this knowledge, ECCI was misled by the contract specifications to believe that the contract could be performed in 365 days, and USACE failed to share with ECCI its superior knowledge that 550 to 600 days were necessary to perform the contract. These operative facts are the same as or related to those on which ECCI relies for its breach of warranty of specifications and breach of the duty of good faith and fair dealing theories of recovery. The added factual details that ECCI argues in

11

post-hearing briefing support this theory of recovery track closely with the added factual details, it argues support its first two theories of recovery, including that USACE knew that the recommended period of performance for the sister project at Camp Shaheen, the Group A Expansion, was 541 days, and that to substantially reduce that would require two 10-hour shifts throughout performance, which USACE knew but did not disclose would not be allowed; and also that USACE knew but did not disclose that it was unprepared to implement the austere design standards in the contract, or any other measures to facilitate accelerated construction which were necessary to meet the 365-day period of performance (app. br. at 124-130). Moreover, the elements of breach of duty to disclose superior knowledge overlap and do not differ materially from those of the two theories of recovery presented to the contracting officer in ECCI's certified claim. Therefore, we conclude that ECCI's certified claim adequately apprised the contracting officer of the issues and relief sought, and that superior knowledge is not a new claim, but an alternative theory of recovery that we have jurisdiction to adjudicate.

## CONCLUSION

The government's motion to dismiss is denied as to Count II (breach of the implied warranty of specifications), Count III (breach of the duty to disclose superior knowledge), and Count IV (breach of the implied duty of good faith and fair dealing) of ECCI's complaint. The motion is granted as to Count I (commercial impracticability).

Dated: January 25, 2022

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

12

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60167, Appeal of ECC International, LLC, rendered in conformance with the Board's Charter.

Dated: January 26, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals